CARLOS GARCIA,

      Plaintiff,

vs.

CAROLYN W. CORVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon the parties' cross-Motions for Summary Judgment **(ECF No. 19, 20)**, and an Order of Referral entered by the Honorable Darrin P. Gayles. **(ECF No. 4)**. Upon review of the Motions, the Responses, the court file, the administrative record, the applicable law, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

On May 21, 2012, Plaintiff Carlos Garcia (hereinafter "Garcia") filed an application for a period of disability/disability insurance benefits, and an application for supplemental security income. **[Tr. 22]**.[1] In both applications, Garcia alleges a disability onset beginning on April 20, 2012. Id. The Social Security Administration ("SSA") denied the claim initially on July 31, 2012, and upon reconsideration on September 27, 2012. Id. Thereafter, on November 13, 2012, Garcia filed a written request for a

---

[1] References to the administrative record, which is located at Docket Entry No. 13, shall be designated as: [Tr. Page Number].

hearing. Id. A hearing was held on June 10, 2014, before Administrative Law Judge ("ALJ") Timothy Maher. **[Tr. 32]**.

After the hearing, the record was held open so that Garcia's counsel could attempt to secure legible copies of treatment notes from Garcia's treating psychiatrist. **[Tr. 32]**. On June 30, 2014, Garcia submitted an assessment from Dr. Josie Ramos in lieu of transcribed treatment notes. Id. On July 11, 2014, the ALJ issued his decision, finding that Garcia was not disabled. **[Tr. 23, 32]**. Garcia timely pursued, and exhausted, his administrative remedies. This action followed. The case is now ripe for review under 42 U.S.C. § 405(g).

Garcia was fifty-one (51) years of age at the alleged onset date of April 20, 2012. **[Tr. 31]**. He has a high school education and past relevant work as a trailer/truck driver. **[Tr. 30-31]**. Garcia alleges, among other things, that he is unable to engage in full-time competitive work due to depression and other mental disorders. **[Tr. 225]**.

### Medical Records

Garcia sought mental health treatment from psychologist Dr. Joel Plattor from March 29, 2001, through April 20, 2012. Dr. Plattor opined that Garcia has had major depression, recurrent type, since 2012. **[Tr. 328]**. He also found that Garcia suffers from overwhelming anxiety and delusional, paranoid thought processes, and that his mental functions were compromised by his high level of anxiety and his obsessive thoughts. **[Tr. 331-32]**. In Dr. Plattor's opinion, Garcia's work-related activities are affected by these symptoms. **[Tr. 332]**.

Dr. Plattor's treatment notes, however, indicate that Garcia was consistently alert and oriented in all spheres. **[Tr. 353-59]**. Although there was a notation that Garcia's concentration was impaired, Dr. Plattor noted that his speech was normal, he maintained good eye contact, was consistently

2

cooperative, and denied experiencing any psychotic symptoms. **[Tr. 353-59]**. Dr. Plattor also consistently assessed Garcia with a Global Assessment of Functioning (GAF) score of 60. **[Tr. 353-59]**.

Early in his treatment, Dr. Plattor referred Garcia to psychiatrist Josie Ramos for further mental health treatment. **[Tr. 376]**. Dr. Ramos treated Garcia from October 3, 2001, through February 18, 2004, several years prior to the alleged onset date. Garcia saw Dr. Ramos again from June 29, 2007 through December 12, 2013, however, his visits were less frequent during this period. **[Tr. 285-313, 367]**.

Dr. Ramos prepared a "Narrative and Medical Source Statement" on June 27, 2014, summarizing her treatment and observations. **[Tr. 376-78]**. Specifically, Dr. Ramos stated that Garcia had a long psychiatric history of obsessive-compulsive disorder, recurrent depression, and a paranoid, delusional thought process. **[Tr. 376]**. In this connection, Dr. Ramos detailed Garcia's alleged problems as a commercial truck driver, stating that a recurring theme was that Garcia believed that management was unfair to him and he saw things/images causing him to feel like he was being watched by management. **[Tr. 376]**.

Dr. Ramos explained that during the first period of treatment, Garcia's paranoid delusional thinking improved with medication–Risperidone, Fluoxetine (Prozac), and Clonazepam. **[Tr. 376]**. However, by the second period of treatment, Garcia had been noncompliant with taking Risperidone and Dr. Ramos noted that he had worsening schizoid behaviors, a more disheveled appearance, weight loss, had separated from his wife, and was having problems at work because of increased paranoia. **[Tr. 376]**. Eventually, Garcia quit his job, citing increasing paranoia. **[Tr. 376]**. He started working with a new employer, but began having interpersonal problems with his new employer, as well. **[Tr. 376]**. According to Dr. Ramos, these problems triggered a greater deterioration with an inability to

concentrate and make decisions, an increase in isolative behaviors, and a sixty-pound weight loss by 2013. **[Tr. 376]**. Dr. Ramos concluded that Garcia's symptoms and behaviors are consistent with schizo-affective disorder, depressed type. **[Tr. 377]**. Further, she opined that Garcia is unable to maintain any employment or any relationship, and if not for the kindness of his ex-wife, he would be homeless. **[Tr. 377]**.

On May 9, 2012, Garcia sought treatment at Jackson Mental Health complaining of depression and insomnia. **[Tr. 314]**. He was interviewed by psychiatrist Hari K. Nair and reported that he was not taking any of his prescribed medications because he could not afford them. **[Tr. 314]**. Upon conducting a mental status examination, Dr. Nair noted that Garcia was calm, cooperative, and maintained good eye contact. **[Tr. 314]**. Garcia's concentration and memory were characterized as unremarkable. **[Tr. 314]**. His thought process was goal directed, his content unremarkable, and he exhibited fair insight and judgment. **[Tr. 314]**. Dr. Nair found that Garcia did not meet the criteria for involuntary hospitalization and discharged him with prescriptions the following day, May 10, 2012. **[Tr. 315]**.

At the request of the state agency, Drs. Pamela Green and Richard Willens, psychologists, reviewed the record evidence on July 20, 2012, and September 27, 2012, respectively. **[Tr. 55-63, 75-86]**. Neither doctor conducted an examination of Garcia. **[Id.]**. From her review of the medical opinions available to her, Dr. Green found that Garcia was not significantly limited in his ability to carry out detailed instructions or his abilities to work in coordination with or in proximity to others without being distracted by them. **[Tr. 61]**. Dr. Willens' findings were slightly more restrictive, concluding that Garcia was moderately limited in these areas. **[Tr. 81-82]**. Nevertheless, both doctors concluded that Garcia is not disabled. **[Tr. 62, 85]**.

On July 25, 2012, Garcia underwent a consultative psychological examination with Dr. Evalina Bestman. [**Tr. 323-26**]. Although Dr. Bestman noted that Garcia showed a mild level of distress and reported feeling depressed, Garcia easily established a good rapport with Dr. Bestman. At the time, his hygiene and grooming appeared fair. [**Tr. 324**] He was polite, congenial, patient, talkative, and cooperative throughout the evaluation. [**Tr. 323**]. He was also open and responsive to questions and tasks, [**Tr. 323**], and denied having any hallucinations or delusions. [**Tr. 324**]. His immediate, recent, and remote memory were intact, and he exhibited an intact fund of information. [**Tr. 325**]. Garcia was able to perform serial seven calculations, as well as add, subtract, multiply, and divide single digits. [**Tr. 325**]. Although his judgment was impaired, Dr. Bestman noted that his ability to think abstractly was adequate and that he had an insight into his illness. [**Tr. 325**].

Following her examination of Garcia, Dr. Bestman concluded that he was able to manage his personal funds, was generally able to perform personal care tasks, and was able to apply himself to most or all tasks assigned during the evaluation. She noted that he showed adequate concentration and persistence. [**Tr. 326**]. Dr. Bestman also concluded that Garcia appeared to have motivation to perform tasks and was conscientious and focused. [**Tr. 326**]. In this connection, Dr. Bestman found that, with consistent psychiatric treatment, his prognosis should improve. [**Tr. 326**].

## Hearing Testimony

At the administrative hearing on June 10, 2014, Garcia testified that he had experienced depression and a lack of motivation or energy over the previous two to three years, and that he stopped working as a result of his depression and anxiety. [**Tr. 46**]. Garcia attested that he had been prescribed medications by Dr. Josie Ramos, whom he had last seen around January 2014. However, Garcia testified that, since he stopped working, he had not seen Dr. Ramos often because he could not afford

5

the $110 per visit. **[Tr. 45-46, 48]**. Garcia stated that he lives alone in a one-bedroom apartment, and he described a typical day as staying home and watching television. **[Tr. 44]**. He testified that he does not go outside, he showers every three days, and he does not clean or do laundry because of a lack of motivation and energy. **[Tr. 44, 49]**. Garcia also testified that he receives food stamps monthly and goes grocery shopping approximately every 10 days. **[Tr. 45-46]**. He stated that he relies on his friend Pablo when he needs to travel (such as to the doctor's office or grocery store), and when he needs to borrow money (for doctor's visits or when his food stamps run out). **[Tr. 43]**. Other than with Pablo, Garcia testified that he does not regularly interact with anyone. **[Tr. 43]**.

When vocational expert Lorin Lovely testified, the ALJ provided the following hypothetical: an individual of Garcia's age, education, and work history, with various qualifications, including, but not limited to, that the individual could respond appropriately to supervision and interact appropriately with coworkers, but could not be exposed to workplace hazards and was limited to occupations which require no more than occasional interaction with supervisors and coworkers. **[Tr. 49-50]**. Given these limitations, Lovely opined that such an individual could not perform Garcia's past work as a tractor trailer driver due to mental restrictions, but could perform other jobs, such as work as an industrial cleaner, a laundry laborer, or a garment sorter. **[Tr. 50]**. However, Lovely opined that if the hypothetical individual could be expected to miss work more than one day per month due to psychiatric symptoms, he would not be able to sustain any job. **[Tr. 50]**. Further, Lovely reviewed Dr. Ramos' medical source statement and opined that, if the exhibit accurately reflected Garcia's limitations, he would not be capable of performing any type of work. **[Tr. 51-52]**.

### Applicable Law

Disability is defined as the "inability to do any substantial gainful activity by reason of any

6

medically determinable physical or mental impairment which can be expected to result in death or has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). In order to constitute disability, the impairment must

be "severe," meaning the claimant can neither do his previous work nor "any substantial gainful work

existing in the national economy." 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505(a); 404-1511.

In order to determine whether an individual is disabled, the SSA regulations provide a five-step

sequential evaluation process. 20 C.F.R. §§ 404.1520; 416.920. First, the ALJ must evaluate whether

the claimant is engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b); 416.920(b). If the

claimant is engaging in such activity, the claimant is not disabled and the inquiry ends. 20 C.F.R. §

404.1520(b).

In the second step, the ALJ must determine whether the claimant has a medically determinable

impairment or combination of impairments that is "severe," meaning it significantly limits the

claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520 © ; 416.920 ©. The claimant

bears the burden of providing substantial evidence to establish an impairment that has more than a

minimal effect on his ability to perform basic work. Bridges v. Bowen, 815 F.2d 622, 625-26 (11th Cir.

1987). Absent the ALJ's finding of a "severe" impairment or combination of impairments, the claimant

is not disabled. If the ALJ makes such a finding, the analysis proceeds to step three.

Certain impairments are so severe that, if established, they require a finding of disability.

Gibson v. Heckler, 762 F.2d 1516, 1518, n. 1 (11th Cir. 1985). At step three, the ALJ must determine

whether the claimant's impairment or combination of impairments meet or medically equal the criteria

listed in 20 C.F.R. § 404.1520(d), Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d); 404.1525;

404.1526; 416.920(d). If the ALJ finds that the claimant's impairments reach the severity of the listed

criteria, the claimant is disabled; if not, the analysis proceeds to the next step.

Before conducting the step four analysis, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e); 416.920 (e). A claimant's RFC is defined as the claimant's ability to perform mental and physical work activities on a sustained basis, despite limitations as a result of his impairment. 20 C.F.R. § 404.1545(a). In determining the claimant's RFC, the ALJ must consider all record evidence and all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e); 404. 1545.

After determining the claimant's RFC, step four requires the ALJ to assess whether, based on the RFC, the claimant can continue to perform past relevant work. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proving that his impairments preclude his past relevant work. 20 C.F.R. § 404.1512( c); 416.912( c). If the ALJ determines that the claimant's impairments do not prevent him from performing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520 (f). However, if the claimant establishes that he cannot perform past relevant work, a *prima facie* case of disability is established, and the analysis proceeds to the final step. 20 C.F.R. §§ 404.1520(e); 416.920(e).

In step five, the ALJ must determine whether the claimant is able to do any work in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g). If the claimant is able to do other work, he is not disabled. If his impairments prevent him from performing other work, the claimant is disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). At this final step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that exists in significant numbers in the national economy, given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g); 404.1560( c). In sum, the burden rests with the claimant through the first four steps of the analysis, and then shifts to the Commissioner at step five. Audler v. Astrue, 501 F.3d

8

446, 448 (5th Cir. 2007).

## **Summary of ALJ's Findings**

At step one, the ALJ found that Garcia had not engaged in substantial gainful activity since April 20, 2012, the alleged onset date. **[Tr. 24]**. At step two, the ALJ found that Garcia had severe impairments: a major depressive disorder and/or an anxiety disorder. **[Tr. 24]**. At step three, the ALJ found that Garcia did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. **[Tr. 25]**. The ALJ found that Garcia had moderate limitations in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation of any extended duration. **[Tr. 25-27]**.

Next, the ALJ considered the entire record and found that Garcia had the RFC to perform work at all exertional levels, but that he was limited to occupations which require no more than the basic demands of unskilled work. **[Tr. 27-30]**. Moreover, the ALJ found that Garcia was limited to occupations in which he will not be exposed to workplace hazards, he will have no more than occasional interaction with supervisors and coworkers, and he will have no interaction with the public. **[Tr. 27-30]**. Based on these findings, the ALJ found, at step four, that Garcia could not perform his past relevant work. **[Tr. 30-31]**.

After considering Garcia's age, education, work experience, and RFC, in conjunction with testimony from a vocational expert and the Medical-Vocational Rules set forth at 20 CFR Part 404, Subpart P, Appendix 2, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Garcia could perform. **[Tr. 31-32]**. Thus, the ALJ found that

Garcia was not disabled. **[Tr. 32]**.

**Standard of Review**

In a disability case, judicial review is limited to determining whether the ALJ's factual findings were supported by substantial evidence and whether the correct legal standards were applied. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 L.Ed.2d 842 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); 42 U.S.C. § 405(g). "Substantial evidence"means more than a scintilla, but less than a preponderance, and is generally defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining whether substantial evidence exists, "[t]he district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [ALJ's] decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). The reviewing court must also be satisfied that the ALJ's decision correctly applied the legal standards. Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987).

However, in reviewing the ALJ's decision, the court may not re-weigh evidence or substitute its judgment for the ALJ's conclusion, even if the court finds that the weight of the evidence is against the decision. Baker on Behalf of Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989); Martin v. Sullivan, 894 F.2d 1520 (11th Cir. 1990). In fact, so long as the decision is supported by substantial evidence, the court must affirm–even if the court finds that the evidence preponderates against the ALJ's decision or if it would have reached a contrary result itself. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); 42 U.S.C. § 405(g). In other words, the court is not permitted to re-weigh evidence or decide the facts anew. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

This restrictive standard of review, however, applies only to findings of fact. "No similar

presumption of validity attaches to the [ALJ's] conclusions of law." Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (*quoting* MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). The ALJ's failure to apply the correct legal standards or to provide the reviewing court with sufficient reasoning to determine that the correct legal principles were followed are grounds for reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## Analysis

By way of summary, Garcia argues that the ALJ: (1) failed to properly assess the opinion evidence of record, and (2) failed to properly assess his alleged symptoms and limitations. Each argument shall be addressed in turn.

### 1.    Did the ALJ properly assess the opinion evidence of record?

Garcia argues that the ALJ failed to articulate the weight he accorded the opinions of consultative psychiatrist, Dr. Evalina Bestman, and State agency reviewing psychologists, Pamela Green and Richard Willens. Specifically, Garcia contends that remand is warranted because the ALJ relied on Dr. Bestman's opinions to undermine the opinions of his treating psychiatrist and psychologist, Drs. Ramos and Plattor, without articulating the weight that he accorded the opinions. Moreover, Garcia argues that the ALJ failed to address Drs. Ramos' and Plattor's opinions in their entireties, instead according ambiguous and inadequate weight to the opinions expressed in their Mental RFC Assessments. With regards to Drs. Green and Willens, Garcia specifically argues that their opinions warranted a stricter standard of review than applied by the ALJ, because the doctors founded their assessments on records that provided an incomplete history of Garcia's psychiatric treatment, rather than on an examination of Garcia, himself.

On the other hand, the Commissioner argues that the ALJ thoroughly discussed and considered

the opinions of each of the doctors–Ramos, Plattor, Bestman, Willens, and Green–and found the opinions of Drs. Ramos and Plattor to be to be inconsistent with the record evidence. Along these lines, the Commissioner argues that the ALJ's discussion demonstrates that he properly "considered these opinions and [Garcia's] mental condition as a whole." Further, the Commissioner argues that the ALJ is not required to address each opinion provided by a single treating source. Rather, the ALJ has discretion to determine which opinions to address, so long as he considers the record as a whole.

In evaluating a claim for disability, the ALJ must evaluate every medical opinion, 20 C.F.R. §§ 404.1527(d), 416.927(d), taking into "consider[ation] a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing, 20 C.F.R. § 404.1527(d)(1)-(6)). However, the ALJ is not required to specifically refer to every piece of evidence in the record. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Instead, his decision must contain sufficient information to "enable [the court] to conclude that [the ALJ] considered [the] medical condition as a whole" and that it is not simply a "broad rejection" of the evidence. Id. (citing, Foote v. Chater, 67 F. 3d 1553, 1558 (11th Cir. 1995)). If the ALJ determines that the evidence supports a contrary conclusion, he may reject any opinion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

In order for a reviewing court to properly evaluate whether the ALJ applied the correct legal standards in his decision, the ALJ must "state with particularity the weight [given to] the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). The weight cannot be ambiguous; an ALJ's statement that an opinion is entitled to "less than controlling weight" is not sufficiently particular because it leaves unclear whether the ALJ accorded such an

opinion substantial weight or little weight. Salazar v. Comm'r of Soc. Sec., 2015 WL 12533089, at *4 (S.D. Fla. Feb. 12, 2015). "It is not for the court to approximate the extent to which an ALJ values a particular medical opinion." Id. Without the ALJ's statements of particularity, a reviewing court is unable to determine whether substantial evidence supports the decision. Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985).

Doctors' opinions are generally entitled to differing levels of deference, depending on their specialization and their relationship with the claimant. McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing, 20 C.F.R. § 404.1527(d)(1), (2), & (5)). Stated differently, a treating physician's testimony must be given "substantial or considerable weight unless 'good cause' is shown to the contrary.'" Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause to discount an opinion may arise when the opinion is "not bolstered by the evidence, . . . the evidence support[s] a contrary finding, or . . . [the opinion is] conclusory or inconsistent with [the doctor's own] medical records." Lewis, 125 F.3d at 1440. Moreover, "the opinions of non-examining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Shafarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).

### A.     Dr. Bestman

Here, as noted above, Garcia argues that the ALJ failed to state with particularity the weight assigned to Dr. Bestman's opinion. Upon review of the hearing transcript and the ALJ's decision, the undersigned agrees.

Dr. Bestman examined Garcia on July 25, 2012. [Tr. 326]. She observed that Garcia "showed a mild level of distress as evidenced by apprehension and facial grimaces," had "generally sad" facial

expressions, and "often stared intensely or closed his eyes." [Tr. 323]. She noted that he was "congenial, patient, polite, quiet, and concerned by failure." [Id.]. In his examination with Dr. Bestman, Garcia reported a history of sexual and physical abuse and a family history of mental illness. [Id.]. Despite these observations, Dr. Bestman found that Garcia was "alert and oriented to all spheres," had intact memory, exhibited an intact fund of information, and demonstrated adequate concentration and attention. [Tr. 325].

Dr. Bestman is an examining, non-treating physician, so her opinions are generally entitled to more weight than non-examining physicians, but less than treating physicians. See McNamee, 164 F. App'x at 923. In his decision, the ALJ made extensive references to Dr. Bestman's findings, but did not articulate the extent to which he relied on them. Notably, it appears that the ALJ cited Dr. Bestman's opinion as a basis for according less than controlling weight to the opinions of Drs. Ramos and Plattor, both of whom are Garcia's treating physicians (discussed *infra*). For example, the ALJ relied on Dr. Bestman's notes that Garcia "showed adequate concentration and persistence" to undermine Dr. Plattor's notes that Garcia's concentration was impaired. [Tr. 19]. He additionally relied on Dr. Bestman's observations that Garcia was "alert and oriented in all domains" to undermine Dr. Ramos' notes that Garcia had "impaired . . . cognitive [and] executive functioning." [Tr. 30]. The ALJ's failure to assign any weight to Dr. Bestman's opinion, despite frequently citing to it and clearly relying on it, precludes this court from properly evaluating and determining whether the ALJ applied the proper legal standards in his consideration of the same.

### B.    Drs. Green and Willens

For similar reasons, the undersigned likewise finds that the ALJ erred in failing to articulate the weight accorded to the opinions of Drs. Green and Willens, both non-examining state agency reviewers.

In July 2012, Dr. Green reviewed the record evidence available at the time, without examining Garcia, and concluded that Garcia had mild restrictions on activities of daily living and maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and "one or two" repeated episodes of decompensation, each of extended duration. [Tr. 59]. Similarly, in September 2012, Dr. Willens reviewed the record evidence and determined that Garcia had mild restrictions of daily living and moderate difficulties maintaining concentration, persistence, or pace. [Tr. 79-80]. However, Dr. Willen's findings differed from Dr. Green's in two listings. First, he found Garcia to have moderate difficulties maintaining social functioning and, second, he found no repeated episodes of decompensation. [Tr. 79]. Because certain records were submitted after September 2012–including Garcia's treating physicians' RFC Assessments–Drs. Green and Willens based their analyses on an incomplete record of medical evidence. [Tr. 328-33, 370-77].

As non-examining physicians, Dr. Willens' and Dr. Green's opinions are generally entitled to the least weight. Here, the ALJ referenced Dr. Green in his step three analysis, [Tr. 25-26] and Dr. Willens in his step three and RFC findings, [Tr. 25-26, 30], so it is evident that he relied on these opinions in some capacity. He notes, for example, that his conclusion that Garcia has moderate deficits in social functioning "is consistent with the opinion of Dr. Richard Willens, but is more restrictive than the opinion of Dr. Pamela Green." [Tr. 26]. However, these notations about whether his opinion is consistent with Drs. Willens' and Green's findings are the only instances in which the ALJ references them. Although they are not discussed extensively, it is not for this Court to estimate the extent to which the ALJ relied on the non-examining physicians' opinions. See Salazar, 2015 WL 12533089. Therefore, because the ALJ did not specify the weight he assigned to the opinions, the undersigned is unable to properly evaluate whether the correct legal standards were applied or "whether the ultimate decision

on the merits of the claim is rational and supported by substantial evidence." <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F. 2d 731,735 (11th Cir. 1981)).

### C. Drs. Ramos and Plattor

Drs. Ramos and Plattor are Garcia's treating physicians. Garcia argues that the ALJ erred in (1) failing to discuss the entirety of Drs. Ramos' and Plattor's opinions and (2) assigning inadequate and ambiguous weight to their respective medical source statements.

Dr. Plattor treated Garcia from March 29, 2001, through April 20, 2012. Dr. Plattor consistently observed that Garcia was "alert and oriented" in all spheres and exhibited "good" grooming. [Tr. 330]. Shortly after beginning treatment, Dr. Plattor referred Garcia to Dr. Ramos, who saw Garcia from October 3, 2001, through February 13, 2004, and again from June 29, 2007, through December 12, 2013. [Tr. 376]. In a treatment summary submitted June 27, 2014, Dr. Ramos opined that "[Garcia] is unable to maintain any employment or any relationship at this time and if not for the kindness of an aunt and his previous wife he'd be homeless today." [Tr. 377]. Here, the ALJ stated that the RFC assessments of Drs. Ramos and Plattor were "not entitled to controlling weight," "overly dire," and "of limited probative value" because they were inconsistent with the record. [Tr. 29-30]. In support of this, the ALJ appears to have significantly relied on Dr. Bestman's opinion to undermine those of the treating doctors; although he does not specifically articulate this, it is cited most often as evidence of inconsistencies in the record. [Id.].

The record includes the following submissions from Drs. Ramos and Plattor, respectively: treatment notes and a medical source statement from Dr. Plattor, [Tr. 328-59]; and treatment records, [Tr. 285-313, 360-66], progress notes, [Tr. 367-68], a medical source statement, [Tr. 369-75], and a treatment summary, [Tr. 376-78], from Dr. Ramos. Garcia first contends that the ALJ erred in failing

16

to assign weight to the entirety of these opinions, instead according weight only to the doctors' medical source statements. However, under <u>Dyer</u>, the ALJ is not required to expressly discuss each opinion provided by a single treating source. 395 F.3d at 1211. Instead, he must evaluate the opinion "as a whole." <u>Id.</u> Here, the ALJ thoroughly discussed the doctors' opinions–and their limitations and inconsistencies–at every step of the analysis. [Tr. 25-30]. Thus, the undersigned finds that the ALJ adequately discussed the opinions as a whole and Garcia's first argument fails. Accordingly, the undersigned will proceed to discuss only element two (2) of Garcia's claim regarding Drs. Ramos and Plattor.

Here, the undersigned faces two issues. First, without information regarding the weight given to Drs. Bestman, Green, and Willens (*supra*), the undersigned is unable to determine whether good cause exists to regard the treating physicians' opinions with less-than-substantial weight; in other words, the undersigned cannot determine the proper weight that *should* be accorded to Drs. Ramos and Plattor until the relative weights of each of the doctor's opinions are known. <u>See Lewis</u>, 125 F. 3d at 1440 (holding, "[w]e have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding.") (citation omitted). Simply put, the undersigned cannot determine whether "the evidence supported a contrary finding" if there is no indication as to how or why the evidence was evaluated in the manner it was. <u>See id.</u>

Second, because the terms used by the ALJ are ambiguous, the court cannot determine the weight that was *actually* accorded to the opinions. This situation is similar to that in <u>Salazar v. Comm'r of Soc. Sec.</u>, where the ALJ accorded "less than controlling weight" to the opinions of two treating physicians. 2015 WL 12533089, at *4 (S.D. Fla. Feb. 12, 2015). There, the court held that it was unable to determine whether the ALJ gave proper weight to the medical opinions because "less than controlling

weight" was not a sufficiently particular statement. Id. Accordingly, the case was remanded so the ALJ could state with particularity the weight given to the medical opinions and the reasons for giving such weight. Id.

Likewise, here, the ALJ's statements fail to provide this court with sufficient information to determine the weight given to Garcia's treating physicians. Although it is not likely, the words "not entitled to controlling weight" *may* signify that the ALJ regarded them with "substantial" weight, as required absent good cause. Alternatively, they *may* actually mean that he regarded them with little to no weight. Based upon the current record, it is impossible to tell.

Again, without the ALJ's statements of particularity regarding the weight given each doctor's opinion–Drs. Bestman, Green, Willens, Ramos, and Plattor–the undersigned cannot determine whether the correct legal standards were applied. Thus, remand is warranted. To hold otherwise "approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Winschel, 631 F.3d at 1179.

### 2. Did the ALJ properly assess the Claimant's alleged symptoms and limitations?

Garcia also argues that the ALJ failed to properly assess his alleged symptoms and limitations pursuant to SSR 16-3p in concluding that Garcia's claim was "not persuasive." The Commissioner, however, notes that the ALJ observed inconsistencies between Garcia's reported limitations and other record evidence, which warranted the ALJ's finding.

SSR 16-3p states in relevant part that its purpose is to "eliminat[e] the use of the term "credibility" from [its] sub-regulatory policy, as [the] regulations do not use this term." Furthermore, it clarifies that "subjective symptom evaluation is not an examination of an individual's character," but, rather, "will more closely follow [the] regulatory language regarding symptom evaluation." Id. To

determine whether an individual is disabled, SSR 16-3p provides that the ALJ "consider[s] all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Id. The regulation defines a symptom as the individual's statements regarding his impairments, but notes that the individual's statements, without more, are insufficient to establishment an impairment. Id. If an individual alleges impairment symptoms, SSR 16-3p provides for a two-step process to evaluate them. Id.

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." Id. If the first step is established, the ALJ must evaluate the intensity and persistence of the symptoms in order to ascertain the limitations said symptoms impose on the individual's ability to perform work-related activities. Id. "In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record." Id. "The ALJ can make credibility determinations regarding a claimant's subjective complaints," but he must provide specific reasons for such a finding. Maloy v. Comm'r of Soc. Sec., No 8:15-CV-2587-T-JSS, 2017 WL 382724, *1, at *8 (M.D. Fla. 2017) (quoting, Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

The issue in this case is whether the ALJ's decision contained sufficient explanation to show that the ALJ "considered [Garcia's] medical conditions as a whole." Dyer, 395 F.3d at 1211. Here, the undersigned disagrees with Garcia's contentions that, in using the words "not persuasive," "overly dire," and "of limited probative value," the ALJ failed to meet the terms of SSR 16-3p. At step one of the

19

two-step process outlined in SSR 16-3p, the ALJ found that Garcia's medically determinable impairments could reasonably be expected to cause the alleged symptoms. [Tr. 28]. At step two, however, the ALJ found that Garcia's statements concerning the intensity, persistence, and limiting effects of these symptoms were not persuasive to the extent that they were inconsistent with the case record, including medical records and testimony. [Tr. 28].

The ALJ considered and rejected Garcia's subjective testimony in light of the objective medical evidence. [Tr. 28]. Specifically, the ALJ noted that Garcia's testimony regarding his hygiene was inconsistent with notes from Dr. Plattor– consistently characterizing Garcia's grooming as "good"–and notes from an examination by Dr. Bestman, in which she observed that Garcia was "appropriately attired and exhibited fair hygiene and grooming." [Tr. 25]. Additionally, the ALJ compared Garcia's testimony regarding his anxiety and social isolation with observations in his medical records: Dr. Plattor consistently noted that Garcia was cooperative, Dr. Bestman found Garcia to be "congenial, patient, polite, but quiet," and Dr. Nair observed that Garcia was "calm and cooperative and maintained good eye contact." [Tr. 25-26]. The ALJ also observed that, despite having access to low-cost treatment as a resident of Miami-Dade County, Florida, Garcia had failed to actively seek psychiatric treatment, suggesting that "his symptoms are not as severe as alleged." [Tr. 28-29]. Upon review of the medical record, the ALJ found that Garcia's treatment notes and medical records did not support his allegations of an inability to work. [Tr. 28].

Consistent with the above, the undersigned finds that the ALJ properly discussed Garcia's alleged impairments "as a whole," and assigned only some weight to Garcia's subjective testimony because, as the ALJ noted, the medical records as a whole did not support his alleged symptoms. [Tr. 33].

## Conclusion

Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED-IN-PART** and **DENIED-IN-PART**, that Defendant's Motion for Summary Judgment **(ECF No. 20)** be **GRANTED-IN-PART** and **DENIED-IN-PART**, and that this case be **REMANDED**, consistent with the above, in order that the ALJ may state with particularity the weight accorded to all relevant medical opinions.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with Judge Gayles within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 6th day of June 2017.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. Darrin P. Gayles
    Counsel of Record

21